UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GILBERT HERRERA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-366 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION**

Petitioner Gilbert Herrera is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Stevenson Unit in Cuero, Texas. The actions about which he complains occurred in Nueces County, Texas. Petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on September 2, 2014.[1] The underlying conviction which is the subject of the petition is a 2011 Nueces County conviction for driving while intoxicated, third offense. Petitioner claims that his constitutional rights were violated during the trial. Respondent filed a motion for summary judgment on December 18, 2014 to which Petitioner responded on March 4, 2015 (D.E. 12, 15). For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Application for Habeas Corpus Relief be denied. It is further recommended that any request for a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on September 2, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331. Petitioner was convicted in Nueces County, Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

A trooper with the Texas Department of Public Safety testified that he stopped Petitioner at 11:00 p.m. on March 18, 2011 after clocking him driving ten miles over the speed limit. The trooper noticed that Petitioner's speech was slurred and he detected an odor of alcohol (3 RR 15-19; D.E. 10-7 at 7-8). The trooper asked Petitioner to step out of the car and asked him if he had been drinking. Petitioner said he had consumed six and a half beers in about an hour or an hour and a half. Petitioner also told the trooper that he had left work at 6:00 p.m. and had been at a bar since then, but was headed home, although he was headed in the opposite direction from where his home was located (3 RR 19-22; D.E. 10-7 at 8-9).

The trooper administered four standardized field sobriety tests and the results indicated that Petitioner was intoxicated. The trooper also asked Petitioner to take a breathalyzer test but he declined (3 RR 23-41, 44-45; D.E. 10-7 at 9-15). The trooper arrested Petitioner and put him in his vehicle. When they arrived at the jail, Petitioner urinated on himself before the trooper could get him out of the car (3 RR 43-44; D.E. 10-7 at 14). The State also presented evidence that Petitioner had twice been convicted of being intoxicated while operating a motor vehicle.

Petitioner pleaded not guilty and was tried in front of a jury, who found him guilty of driving while intoxicated, third offense, on August 24, 2011.  Following a hearing on punishment, the jury assessed a sentence of forty-five years (1 CR 43; D.E. 10-1 at 45).

Petitioner filed a notice of appeal and an attorney was appointed to represent him on appeal.  However, the attorney filed an *Anders*[2] brief, indicating that he had reviewed the record and found no grounds for error upon which an appeal could be predicated (D.E. 10-2).  The Thirteenth Court of Appeals conducted an independent review and found the appeal to be frivolous and without merit.  *Herrera v. State*, No. 13-11-00586-CR, 2013 WL 3895436 (Tex. App.—Corpus Christi 2013, no pet.)(located herein at D.E. 10-4).  Petitioner did not file a petition for discretionary review, but did file an application for habeas corpus relief in state court.  The application was denied without written order by the Texas Court of Criminal Appeals because he had filed it on an outdated form.

Petitioner filed a second state habeas petition on May 16, 2014.  *Ex Parte Herrera*, WR-56,035-03 at 2-28 (D.E. 10-19 at 5-31).  The State filed an answer and the trial court entered findings of fact and conclusions of law on June 26, 2014.  *Id.* at 103-104 (D.E. 10-20 at 36-37).  On July 23, 2014 the Texas Court of Criminal Appeals denied Petitioner's application without written order on the findings of the trial court without a hearing.  *Id.* at "Action Taken" page (D.E. 10-18).

Petitioner filed the instant application on September 2, 2014 and makes the following allegations:

---

[2] *Anders v. California*, 368 U.S. 738 (1967).

(1) He received ineffective assistance of counsel when his attorney
(a) failed to conduct an independent investigation into the facts, circumstances and law of the case;
(b) failed to introduce exculpatory and mitigating evidence;
(c) failed to request, consult and present expert witnesses; and
(d) failed to file a motion to suppress Petitioner's statements and the digital recording made of the arrest;

(2) The prosecutor engaged in misconduct when he
(a) failed to follow mandatory state law and an executive order of the district attorney; and
(b) failed to disclose exculpatory evidence to the defense;

(3) Petitioner's right to due process was violated by the prosecutorial misconduct;

(4) Petitioner was not given proper *Miranda* warnings when he was arrested in violation of his Fifth Amendment rights;

(5) The conviction was obtained by the use of unlawful law enforcement actions;

(6) Petitioner's due process rights were violated when the prosecutor moved to introduce inadmissible evidence, his attorney did not object to it and the trial court allowed the evidence to be admitted.

In the motion for summary judgment, Respondent argues that

(1) Petitioner received effective assistance of counsel;
(2) the State did not engage in prosecutorial misconduct;
(3) Petitioner's Fifth Amendment right against self-incrimination was not violated;
(4) Petitioner's claim that his conviction is the result of unlawful police action is barred from federal habeas review and
(5) Petitioner was not denied a fair trial due to cumulative error.

Respondent concedes that Petitioner has exhausted the claims as he has construed them and also that the petition is timely and not barred as second or successive.

In response to the motion for summary judgment, Petitioner argues that he has met the standard under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)

for showing that he is entitled to habeas corpus relief. He addressed each of Respondent's arguments in turn.[3]

## APPLICABLE LAW

### A. Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is

---

[3] All of Petitioner's arguments are addressed in this Memorandum and Recommendation but some have been combined for the sake of brevity.

a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S.Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

## B. Ineffective Assistance of Trial Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88, 104 S.Ct. at 2064. Petitioner must show "significant prejudice" in a noncapital context. *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.*, 466 U.S. at 690.

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; . . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 788. In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254 (d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

**(1) Failure to Conduct an Independent Investigation or Introduce Exculpatory and Mitigating Evidence**

Petitioner asserts that his attorney failed to fully investigate his case and had he done so, he would have discovered exculpatory and mitigating evidence which could have been introduced at trial. A habeas petitioner who alleges his attorney failed to

investigate his case must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). Petitioner asserts that if his attorney had thoroughly investigated his case he would have discovered that Petitioner had been working many hours of overtime at his job, had screws in his right ankle, was obese, had glaucoma and that he was not a proficient English speaker. If his attorney had known about these conditions, he would have been able to introduce evidence about them and effectively argue that the conditions caused Petitioner to fail the field sobriety tests.

Petitioner further argues that his attorney should have researched the condition of the road because it was rough and also should have discovered that it was windy the night he was stopped, both of which affected his ability to perform the tests. Finally, Petitioner argues that his attorney should have discovered that during the week Petitioner was stopped, the Nueces County District Attorney had issued an order that anyone suspected of driving while intoxicated who refused a breath test would be made to take a blood test.

The state habeas court found that none of the evidence Petitioner claims his attorney would have found had he done a more thorough investigation would have changed the outcome of his trial and Petitioner has not shown that the state court's conclusion was unreasonable under the AEDPA standard. When Petitioner's attorney cross-examined the trooper, he elicited testimony that Petitioner was obese and had screws in his ankle. Also, it was apparent from the digital recording that the wind was blowing and the jury could see the condition of the road. Thus, that evidence was before the jury and a more thorough investigation of those facts would not have changed the

outcome of the trial. In addition, Petitioner has not asserted that he told his attorney that he had glaucoma and it was not ineffective assistance for the attorney not to have sought Petitioner's medical records. Also, any conversations Petitioner had with his attorney revealed his ability to speak English, so again, a more thorough investigation would not have changed his trial strategy or the outcome of the proceeding.

Even if Petitioner's attorney had presented evidence that Petitioner had been working many hours, the jury saw the digital recording where Petitioner said he had left work at 6:00 p.m. and had been at a bar until 11:00 p.m. That statement severely undermined any claim Petitioner might have made that fatigue caused him to do poorly on the field sobriety tests.

Finally, regarding the rule that was in effect that anyone who refused a breathalyzer test would undergo a mandatory blood draw to determine his blood alcohol level, it is unclear how such a discovery by Petitioner's counsel would have changed the outcome of the trial. If Petitioner believed at the time of his arrest that he was not intoxicated, he could have agreed to take a breathalyzer test. Had his attorney brought up the fact that the trooper should have gotten a warrant for Petitioner to have a blood draw, given the rest of the evidence presented at trial, the most obvious conclusion the jury would have reached was that the blood test would have shown that he was intoxicated.

Petitioner has failed to show that a more thorough investigation by his attorney would have changed the outcome of the trial. Thus, summary judgment should be entered for Respondent on this issue.

### (2) Failure to Request, Consult or Present Expert Witnesses

Petitioner contends that his attorney should have consulted an expert witness to testify about the effect Petitioner's medical issues, his exhaustion, the uneven ground at the arrest site and the windy weather had on the outcome of the field sobriety tests. Petitioner also discusses research which calls into question the reliability of the field sobriety tests and argues that his attorney should have had an expert on the tests testify on Petitioner's behalf. He claims that the trooper testified about how performance on the test correlates with blood alcohol levels and that an expert would have been able to refute that testimony.

As discussed above, evidence on several of these issues was either before the jury or would not have affected the outcome of the trial. In addition, it is extremely difficult to prevail on a complaint of uncalled witnesses in a federal habeas petition because the presentation of evidence is a matter of trial strategy and allegations about the testimony of an uncalled witness are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)(citations omitted). To prevail on such a claim, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* The showing is required for both expert and lay witnesses. *Id.*

Petitioner has not named an expert witness he believes his attorney should have called and has not otherwise met the requirements for making out a claim of ineffective

assistance of counsel based on failure to call a witness. Accordingly, it is recommended that summary judgment be entered for Respondent on this issue.

### (3) Fifth Amendment Right Against Self-Incrimination and Failure to File Motion to Suppress

Petitioner claims that if his attorney had moved to suppress the digital recording made on the night of his arrest and also the statement Petitioner made to the trooper, the motions would have been granted and the State would have been left with no evidence that Petitioner was intoxicated. He asserts that the recording and the statement were made in violation of his Fifth Amendment right against self-incrimination because he had not been given *Miranda*[4] warnings prior to making the statements or having his other behavior recorded.

The state habeas court found that Petitioner's Fifth Amendment rights were not violated and *Miranda* warnings were not necessary until after he had been formally arrested. The Supreme Court has held that a single police officer asking a person a modest number of questions and administering a simple balancing test visible to passing motorists is not the functional equivalent of being in custody and *Miranda* rights do not apply. *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984). Thus, the state habeas court's conclusion was not contrary to Supreme Court precedent under the AEDPA standard.

Petitioner has offered no other basis for suppressing the recording. The recording was authenticated by the trooper and it was relevant to the issues in the trial. Such recordings are routinely entered into evidence in DWI trials. *See Hines v. State*, 383

---

[4] *See Miranda v. Arizona*, 348 U.S. 436 (1966).

S.W.3d 615, 625-626 (Tex. App.-- San Antonio 2012, pet. ref'd) and *Vidmer v. State*, No. 04-01-00395-CR, 2002 WL 31557282 at *5 (Tex. App.-- San Antonio 2002, no pet.). Without describing a basis on which the recording could have been suppressed, Petitioner cannot show that his attorney was ineffective for failing to file a motion to suppress. Therefore, it is recommended that summary judgment be entered for Respondent on these issues.

## C. Due Process Violation Based on Prosecutorial Misconduct

Petitioner argues that the trooper violated his rights when he did not administer a mandatory blood test after Petitioner refused to take a breathalyzer test. Petitioner also argues that the prosecutor violated his rights by failing to disclose to the defense that blood tests in DWI stops were mandatory the week Petitioner was stopped. Petitioner provided evidence that a "no refusal" policy was in effect at the time he was stopped for DWI and that any driver who refused a breathalyzer test would be transported to a facility to have his blood drawn (Ex. E to Memo. Of Law, D.E. 2 at 38). The trooper also had authority pursuant to Tex. Transp. Code Ann. § 724.015 (West 2011) to request that Petitioner's blood be drawn.[5]

The state habeas court found that Petitioner was estopped from complaining about the lack of blood alcohol concentration (BAC) results because he refused to be tested and Petitioner has not shown that this conclusion was erroneous under the AEDPA standard. Petitioner refused the breathalyzer test and while the trooper may have been under a

---

[5] Tex. Transp. Code Ann. § 724.015 was found unconstitutional as applied in *Smith v. State*, No. 13-11-00694-CR, 2014 WL 5901759 (Tex. App. – Corpus Christi 2014, pet. granted).

mandate to request a blood draw, Petitioner has not described how the trooper's failure to do so resulted in a due process violation. Petitioner could have taken the breathalyzer test, or he could have requested a blood draw if he wanted his BAC tested. To the extent Petitioner is arguing that a blood draw would have shown that his BAC was below the legal limit, his assertion is a conclusory allegation and insufficient to maintain a cause of action for habeas corpus relief. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

Similarly, Petitioner's argument that the Prosecutor engaged in misconduct when he failed to disclose the "no refusal" policy to the defense is without merit. It is a violation of due process for the prosecutor to withhold evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to show a *Brady* violation a petitioner must demonstrate that (1) the evidence at issue, whether exculpatory or impeaching, was favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently and (3) prejudice resulted from the suppression. *Canales v. Stephens*, 765 F.3d 551, 574 (5th Cir. 2014). Petitioner cannot show any of these three things. Given the evidence of intoxication, the record does not support a conclusion that if the jury had known Petitioner was subject to a mandatory blood draw it would have inferred that the test would have shown that he was not intoxicated. Nor has Petitioner presented any evidence that the Prosecutor was aware that the "no refusal" policy was in place the week Petitioner was arrested. Finally, Petitioner cannot show prejudice because he can only speculate about what effect the information would have had on the jury.

Petitioner has failed to show a due process violation based on the non-administering of the test or on prosecutorial misconduct. Respondent is entitled to summary judgment on this issue.

**D. Testimony of Trooper About Blood Alcohol Concentration**

Petitioner contends that his right to due process was violated when the trooper was allowed to testify that the result of a standard field sobriety test could be correlated to a specific BAC, citing in support *Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994). In *Emerson*, the court held that a law enforcement officer who has received practitioner certification by the State of Texas to administer a horizontal gaze nystagmus test (HGN)[6] may testify about a person's performance on the test, but may not correlate the defendant's performance to a precise BAC. *Id.* at 769. "In other words, an officer trained to administer the standardized sobriety tests may opine that a defendant was under the influence of alcohol, but he or she may not testify to that defendant's exact BAC." *Wisdom v. State*, 39 S.W.3d 320, 323 (Tex. App. –Waco 2001, no pet.)

Petitioner argues that in keeping with *Emerson*, the prosecutor should not have asked the trooper to correlate the results of the HGN to Petitioner's BAC, that

---

[6] Nystagmus is defined as an involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction and horizontal gaze nystagmus is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme. *Emerson*, 880 S.W.2d at 765-766 (citations omitted). Consumption of alcohol affects smooth pursuit and it can be observed by someone moving a stimulus, such as a pen light, in front of a suspect's eyes. The officer looks for "clues" in each eye, such as an inability to pursue smoothly an object moving sideways across the field of vision, a distinct or pronounced nystagmus at the eye's horizontal maximum deviation and an angle of onset of nystagmus of less than or equal to 45 degrees. *Id.* at 766 (citations omitted). If an officer sees four or more clues, the officer classifies the person as intoxicated. *Id.*

Petitioner's attorney should have objected, and the trial court should not have allowed the testimony. However, the record shows that the trooper did not testify about Petitioner's precise BAC, but testified that seventy-seven percent of people who exhibit four clues have a BAC of .1 or higher (3 RR 30-31; D.E. 10-7 at 11). Such testimony does not violate the holding in *Emerson*. *Wisdom*, 39 S.W.3d at 322-323. *See also Lorenz v. State*, 176 S.W.3d 492, 497 (Tex. App. – Houston 2004, pet. ref'd)(trial court did not err in allowing statistical evidence about accuracy of field sobriety tests). Thus, Petitioner cannot show that his due process rights were violated when the jury was allowed to hear testimony regarding the statistical accuracy of the field sobriety tests. Respondent is entitled to summary judgment on this issue.

### E. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.")

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed or denied on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his claims be denied on the merits. Reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. If the district court orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 12) be GRANTED and Petitioner's application for habeas

corpus relief be DENIED. It is further recommended that a Certificate of Appealability be DENIED.

Respectfully submitted this 11th day of May, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).